# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IRREVOCABLE TRUST OF ANTHONY J. ANTONIOUS, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 10 C 5552 |
| TOUR EDGE GOLF MANUFACTURING, INC., | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The Court, in separate orders, directed two attorneys in this case to show cause why they should not be sanctioned in connection with the submission of a motion to appear *pro hac vice* that contained false statements regarding the background of one of the attorneys. Both attorneys have responded. In this decision, the Court considers their submissions.

## Facts

This is a patent infringement case that was transferred to this district from the Central District of California. It involves a patent for the design of a golf club head. Two attorneys filed the complaint in the Central District of California: Melvin K. Silverman, whose office is in Newark, New Jersey, Sepehr Daghighian, whose office is in Beverly Hills, California. Silverman has been a lawyer since 1970; Daghighian has been a lawyer since 2005.

The complaint reflected that Silverman had filed an application to appear *pro hac vice*. Silverman later had to refile his application after the judge struck his original application because he had not paid the required fee. The form application contained this statement: "I am not currently suspended from, and I have never been disbarred from practice in any court." Docket No. 12 at 2. He attached a certificate of good standing from the Supreme Court of New Jersey. *Id.* at 3. In the application, Silverman designated Daghighian as local counsel, and Daghighian signed to reflect his consent to that designation. *Id.* at 2. The judge granted Silverman's application.

On August 31, 2010, a different judge in the Central District of California, to whom the case had been reassigned, granted the defendant's motion to transfer the case to this district. Motions to appear *pro hac vice* were filed in this district on behalf of both Silverman and Daghighian on September 24, 2010, about three weeks after the case was transferred here. A local attorney also appeared on behalf of the plaintiff.

The form *pro hac vice* application in this district differs in several respects from the form that Silverman had used in the Central District of California. In particular, the form includes the following questions and admonition:

> Has the applicant ever been:
>
> censured, suspended, disbarred, or witherwise [sic] disciplined by any court?
>
> or is the applicant currently the subject of an investigation of the applicant's professional conduct?
>
> transferred to inactive status, voluntarily withdrawn, or resigned from the bar of [any] court?
>
> denied admission to the bar of any court?

2

> held in contempt of court?
>
> NOTE: If the answer to *any* of the above questions is yes, please attach a brief description of the incident(s) and the applicant's current status before any court, or any agency thereof, where disciplinary sanctions were imposed, or where an investigation or investigations of the applicant's conduct may have been instituted.

*See, e.g.,* Docket No. 38 at 2 (emphasis in original).[1]

On Silverman's application, the answer "no" was checked on each of the questions quoted above, and the application included no explanatory material. Silverman did not physically sign the form. Rather, his "electronic signature" was placed on the form as "s/ Melvin K. Silverman." *See* Melvin K. Silverman's Resp. to Rule to Show Cause ("Silverman Resp."), Ex. A at 2. The form stated that the applicant "declare[s] under penalty of perjury that the foregoing is true and correct," *id.*, a reference to, among other things, the "no" answers just referenced.

The e-filing receipt for Silverman's *pro hac vice* motion does not identify who filed it. It does, however, state that Silverman (among others) was sent written notice of the filing of the motion. *See* dkt. no. 41, e-filing receipt. On September 30, 2010, the local attorney who had appeared on behalf of the plaintiff noticed both *pro hac vice* motions for presentment in open court on October 14, 2010. The e-filing receipt for the notice of motion reflects that notice of its filing was sent to Silverman. *See* dkt. no. 44, e-filing receipt. On October 13, 2010, after reviewing Silverman and Daghighian's *pro hac vice* motions, the Court granted both of them and vacated the October 14 court date. The e-filing receipt for the Court's order reflects that it was sent by mail to Silverman,

---

[1] The misspelling of "otherwise" has since been corrected in the on-line version of the form.

among others.  See dkt. no. 45, e-filing receipt.

In early November 2010, the Court received by mail, from an unknown and anonymous source, a copy of the decision in *In re Silverman*, 113 N.J. 193, 549 A.2d 1225 (1988), which described a six-year suspension of Silverman's license to practice. The same sender also provided a partial copy of a decision by a Florida appellate court stating that Silverman had knowingly represented a client in Florida despite not being admitted to practice there.  See *Vista Designs, Inc. v. Silverman*, 774 So. 2d 884, 888 (Fla. App. 2001) (stating that "Silverman knowingly engaged in the representation of Vista Designs in Florida even though he was not admitted to practice before this State.").

Though the provenance of this material was unknown to the Court, the Court felt duty-bound to follow up.  The Court checked Silverman's already-granted *pro hac vice* application and noted that it made no reference to the New Jersey suspension.  It was clear from the New Jersey decision that Silverman had previously been suspended from the practice of law, and it was equally clear that this contradicted the sworn statement on his *pro hac vice* application.  For this reason, the Court determined to vacate its order granting the application and to consider sanctioning Silverman.  The Court entered the following order:

> The Clerk is directed to remove the appearance of Melvin Silverman after sending him a copy of this order.  The Court's order of 10/13/10 is vacated to the extent it granted Mr. Silverman's motion for leave to appear pro hac vice.  In the motion that the Court reviewed [docket no. 41], it appears that Mr. Silverman erroneously checked that he had never been suspended, disbarred, or otherwise disciplined by any court.  Someone - it is not clear who - has sent to the Court the decision in *In re Silverman*, 113 N.J. 193, 549 A.2d 1225 (1988), describing a six-year suspension of Mr. Silverman.

4

> (The same sender also provided a partial copy of a decision of a Florida appellate court stating that Mr. Silverman also knowingly represented a client in Florida despite not being admitted to practice there.) Mr. Silverman is ordered to appear on 12/6/10 at 9:30 a.m. to show cause why he should not be sanctioned on the ground that he appears to have made a false statement under penalty of perjury in the motion he filed.

Order of Nov. 15, 2010.

Silverman appeared along with counsel. Via counsel, Silverman also filed a written response to the order to show cause, dated January 7, 2011. Counsel's response stated that Daghighian had prepared the *pro hac vice* application "without prior approval by Mr. Silverman and without relating to Mr. Silverman the specific question that generated the false answer." Silverman Resp. at 1. Silverman's counsel stated in the response that Silverman "apologizes to the Court and he well understands the weakness of [his] explanation – he had the obligation to review the *pro hac vice* application regardless of who prepared it or when it was file[d]." *Id.* at 2.

Silverman's counsel attached to his response an affidavit by Silverman dated November 30, 2010 that he had filed in response to a show cause order entered by a federal district judge in the Northern District of Texas. In that affidavit, Silverman stated that with regard to the New Jersey *Matter of Silverman* case, he "voluntarily withdrew from the practice of law" during the investigation and disposition of the ethics allegations at issue there and that accordingly he was not "involuntarily" suspended from practice, which apparently was one of the issues in the Texas case.[2] Silverman Resp., Ex. H ¶¶ 4-5. This Court notes that the New Jersey Supreme Court's decision in

---

[2] Unlike the *pro hac vice* form used in the Northern District of Texas, the form used in the Northern District of Illinois does not distinguish between voluntary and involuntary suspensions.

5

*Matter of Silverman* says that Silverman "consented to a voluntary suspension of his plenary license to practice." *Matter of Silverman*, 549 A.2d at 1234. The New Jersey court concluded that Silverman had in fact violated several rules of professional conduct but determined to impose "retroactive discipline" consisting of the six-year suspension Silverman had already served. *Id.* at 1247.

Silverman's affidavit also addressed the Florida matter referenced earlier. Silverman stated that he provided the Florida disciplinary authorities with a "cease and desist affidavit" and that as a result those authorities closed their disciplinary file. Silverman Resp., Ex. H ¶ 8. He stated that the case did not result in any suspension of his right to practice. *Id.* ¶ 9.

With regard to with the *pro hac vice* filing at issue in the present case, Silverman stated in his affidavit that "I never authorized Sepehr Daghighian nor anyone else in his office to electronically sign my name on any court documents." *Id.* ¶ 11. He further stated that "[n]either Sepehr Daghighian nor any member of his law office submitted the Illinois Motion to me for prior approval." *Id.* ¶ 12. Silverman stated that the motion was filed with this Court "without my knowledge or approval" and was not "filed pursuant to my authority or agency, express, apparent or implied." *Id.* Silverman's affidavit made no mention of whether he reviewed the *pro hac vice* application after it was filed. The affidavit contained no hint of acceptance of responsibility for failure to supervise or follow up, nor did it contain any expression of regret. Rather, the only expression of regret was the one contained in the submission by Silverman's counsel.

With his response, Silverman also submitted an affidavit from Daghighian. It is

6

worth noting again that at the time the present case was transferred here, Daghighian had been a lawyer for about five years – thirty-five years less than Silverman. Daghighian stated in his affidavit that he had worked with Silverman on several patent infringement suits. Daghighian stated that his office had filed four other *pro hac vice* applications on Silverman's behalf with various federal courts and that his office was therefore "somewhat familiar with Mr. Silverman's background" though unaware of his New Jersey suspension. Silverman Resp., Ex. G ¶¶ 5-6,11.

Daghighian stated the following concerning the false statement in the Silverman *pro hac vice* application filed in this case:

10. My office filed Motions for Leave to Appear Pro Hac Vice (the "Motions") on behalf of myself and Mr. Silverman with the Court on or about September 23, 2010. I paid the fees for these applications with my credit card.

. . .

12. According to my records, at the time that the *Pro Hac Vice* applications were filed, there was an interchange between my office and Mr. Silverman's office concerning the applications.

13. Apparently, however, there was a breakdown in communications and my office did not ask Mr. Silverman any questions regarding the Motion for Leave to Appear Pro Hac Vice.

14. Thus, the Motion was filed with the Court contained [sic] the incorrect information that was noted by the Court in its Order dated November 15, 2010.

15. The Motions were filed by my office on Mr. Silverman's behalf with erroneous information, which is an inexcusable violation of our very important ethical obligations to the Court.

, , ,

17. On November 18, 2010, I received the Court's Order of November 15, 2010 and spoke with Mr. Silverman concerning these errors.

> 18. My firm immediately began an investigation of what transpired and set forth to advise the Court forthrightly of our errors.
>
> 19. It is not and has never been our intention to make any misrepresentations to any Court or in anyway deceive the Court. As noted above, we take our ethical obligations to the Court very seriously.
>
> 20. I am deeply apologetic to the Court for any inconvenience that this error has caused.
>
> . . .
>
> 23. In the future, my office and Mr. Silverman's office will put into practice strict policies of redundant cross-checking of work to ensure that this type of error does not occur again.

*Id.* ¶¶ 10, 12-15, 17-20, 23.

After receiving Silverman's response and Daghighian's affidavit, the Court entered the following order:

> The Court previously issued an order directing Melvin Silverman to show cause why he should not be sanctioned for his apparent submission of a pro hac vice motion containing a false statement made under penalty of perjury. His responses to the order, including an affidavit by counsel of record Sepehr Daghighian, suggest that Mr. Daghighian may have submitted Mr. Silverman's motion (including the apparent false statement) under Mr. Silverman's electronic signature, without showing it to or verifying it with Mr. Silverman. Mr. Daghighian is ordered to show cause in writing, by 2/18/11, why he should not be sanctioned for this apparent conduct.

Order of Feb. 4, 2011.

Daghighian filed a response to the Court's order. He addressed, in greater detail than before, the history of his dealings with Silverman and his submission of this and other *pro hac vice* applications. He again took full responsibility for the misstatement in the *pro hac vice* application that he filed on Silverman's behalf in this district:

8

> Since the November 15, 2010 error, Daghighian and Silverman have
> made every effort to forthrightly explain the error to the Court and have
> taken great pains to make sure that this type of error does not occur
> again. Daghighian is deeply apologetic to the Court for the inconvenience
> caused by this error and, pursuant to the following, should not be
> sanctioned for the error.

Sepehr Daghighian Esq.'s Response to Order to Show Cause ("Daghighian Resp.") at 5. Daghighian, in an affidavit and in his narrative response, agreed that the error was "not justifiable" but said it was the result of his inadvertent failure to make inquiries of Silverman necessitated by the differences between this district's form *pro hac vice* application and those used in other districts. Daghighian stated that he had not acted knowingly or with the intent to deceive this Court. *Id.* at 5, 6. In his affidavit, Daghighian stated that as a result of these errors, he and Silverman now cross-check all court filings against each other's information, and his (Daghighian's) firm now "will only make court filings of a third-party with that party's specific review and consent to such court filings." *Id.*, Daghighian Affid. ¶¶ 35-36.

On January 12, 2011, Silverman's attorney provided the Court with a copy of a 114-page decision issued by Judge John McBryde on January 5, 2011 in the previously-referenced Northern District of Texas case. The matters at issue in that case involved several attorneys in addition to Silverman and focused primarily on events unrelated to the *pro hac vice* filing in the present case – in particular, representations made in documents concerning reassignment of the case from another judge to Judge McBryde and a motion seeking Judge McBryde's recusal, and an evidentiary hearing concerning those and related matters. In his decision, Judge McBryde found as to Silverman that it was probable that he "could be held criminally

9

responsible" for procuring the commission of perjury.  *In re Disciplinary and Sanction Proceedings*, No. 4:10-MC-018-A, slip op. at 108-09 (N.D. Tex. Jan. 5, 2011).  Judge McBryde permanently prohibited Silverman from seeking to appear *pro hac vice* in the Northern District of Texas; required him to attend thirty hours of ethics courses at an accredited law school; and imposed a compensatory monetary sanction of $8,058 relating to certain expenses incurred in the case.  Judge McBryde also referred the matter to the United States Attorney for the Northern District of Texas and to the New Jersey attorney disciplinary authorities.  *Id.* at 109-10.

It appears from the docket in the Texas case that Judge McBryde's ruling is currently on appeal to the United States Court of Appeals for the Fifth Circuit.  For this reason, and because the matters involved there are not before this Court, the Court has not taken into consideration Judge McBryde's decision or the underlying events in the Texas case.

The Court notes one additional fact of significance that it discovered in the course of drafting this decision.  To track down the citation for the Florida case discussed above, the Court performed a Westlaw search for Florida cases using the query "Melvin +2 Silverman."  In addition to the *Vista Designs* case, the search turned up *Silverman v. Silverman*, 719 So. 2d 388 (Fla. App. 1998) (per curiam).  The decision concerned a divorce proceeding in which Silverman was a party.  The Court makes note of the decision not to dredge up details of Silverman's personal life but for another, more pertinent reason:  the decision upheld a trial court's order holding Silverman in contempt.  As noted earlier, the *pro hac vice* application filed on Silverman's behalf in

10

this case included a question asking whether the applicant had ever been "held in contempt of court." The answer "no" was checked off on Silverman's application. That answer was false.

In sum, Silverman's *pro hac vice* application in the present case contained two false statements under penalty of perjury. The first was the denial that Silverman had ever been suspended from the practice of law. The second was the denial that he had ever been held in contempt by a court.

Silverman did not prepare or sign the application. Rather, Daghighian prepared it and caused Silverman's electronic signature to be affixed to it. He did so without going over the application with Silverman. Daghighian also had no express authority from Silverman to submit the *pro hac vice* application to this Court or to cause Silverman's electronic signature to be affixed to it.

Silverman says that Daghighian likewise had no implied authority to submit a *pro hac vice* application on Silverman's behalf. That is a bit hard to swallow. Silverman knew or reasonably would be expected to know that the transfer of the case to this district would necessitate filing a *pro hac vice* application here. He took no steps on his own to do so, and he received notice that Daghighian had filed the application on his behalf. Silverman apparently did not check over the application after he received notice of its filing (if he had, it is fair to assume that he would have seen the errors and then would have had the obligation to take steps to correct them). This suggests that Daghighian did, in fact, have implied authority to file a *pro hac vice* application on Silverman's behalf. That said, it is clear that Daghighian committed misconduct in

11

affixing Silverman's electronic signature to an application made under penalty of perjury without first going over the application with him.

As for Silverman, the record reflects that could be expected to know that a *pro hac vice* application had to be filed in this district and that he received notice that Daghighian had filed an application on his (Silverman's) behalf. Yet there is no indication that Silverman reviewed the application after he learned Daghighian had filed it. Silverman also took no steps to correct the false statements in the application.

Even if Silverman did not review the *pro hac vice* application when he received notice that Daghighian had filed it, he saw and reviewed it in preparing the affidavit that he submitted to the judge in the Texas case and attached to his response in this case (the affidavit specifically discussed the application). Yet neither in the affidavit nor elsewhere in Silverman's submission to this Court did he disclose or explain the false denial in the application that he had ever been held in contempt of court.

**Discussion**

The false statements in Silverman's *pro hac vice* application were unquestionably material. It is hornbook law that a false statement's materiality is assessed by looking not at whether it actually influenced a decision, but by assessing whether it was capable of doing so. *See, e.g., United States v. Lupton*, 620 F.3d 790, 806-07 (7th Cir. 2010). The statements in question were undeniably capable of influencing the Court's decision in deciding whether to grant Silverman *pro hac vice* status.

That said, the Court cannot say that it actually would have denied Silverman's

application had it known about his earlier New Jersey suspension or the fact that he had been held in contempt in his Florida divorce case. If the application had disclosed these facts and explained them, the Court likely would have granted the application. This is a mitigating factor even though it does not excuse the misconduct.

Daghighian appears to have assumed from Silverman's *pro hac vice* applications in other cases they had handled together that his answers to each of the pertinent questions on this district's form was no. It was unreasonable, even reckless, for Daghighian to make this assumption – particularly because the *pro hac vice* application was being made under penalty of perjury and was being filed with a court. Indeed, the differences between this district's form *pro hac vice* application and those that Daghighian and Silverman filed elsewhere were readily apparent from the face of the applications.

It was likewise improper, and highly reckless, for Daghighian to affix Silverman's electronic signature to the application without first going over the application with him. A reasonable attorney is expected to know that it is improper to affix another person's signature to a document filed with a court without having the person's express or even tacit approval regarding the document's contents.

Though Daghighian's misconduct was quite serious, he has acknowledged the misconduct, has accepted full responsibility for it, and has taken steps to make sure he does not repeat the error. In addition, though Daghighian is not a brand-new lawyer, the fact that he had, at the time, been practicing only for a few years is a mitigating factor in the Court's view.

Silverman did not himself make any false submissions to the Court. But that

does not absolve him from responsibility. Silverman unquestionably knew the case had been transferred from the Central District of California to this district; the e-filing receipt for service of the transfer order reflects that it was e-mailed to him. *See* dkt. no. 34, e-filing receipt. As an experienced attorney who, it appears, has practiced and filed *pro hac vice* applications in a number of districts, it had to have been readily apparent to Silverman that he would need to submit a *pro hac vice* application before participating in the case in this district following transfer. And even if that were not so, he received notice of Daghighian's filing of the *pro hac vice* application on his behalf. Silverman also received notice of the Court's order granting his *pro hac vice* application. Yet though Silverman says that Daghighian had acted without his express or implied authority, Silverman did nothing to correct the serious errors that would have been readily apparent to him from the face of the application. This means either that Silverman saw the errors and did nothing, or that after being put on notice of the application's existence, he did not bother to review a court filings made under his name that he has sworn he gave Daghighian no authority to file. It defies explanation that Silverman failed to look at the *pro hac vice* application once he was on notice that it had been filed without his express authorization. Silverman's inaction was highly reckless.

In sum, Silverman blithely and recklessly disregarded his responsibility as an attorney admitted to appear *pro hac vice* to correct the false statements that had been made to the Court in his name. In the Court's view, Silverman also recklessly disregarded his supervisory responsibility as the senior attorney on a case in which he was working with a lawyer who had been practicing for some thirty-five fewer years than

14

he.

Silverman's misconduct is less severe than Daghighian's.  For Silverman, however, there is little mitigation.  As the Court has indicated, it likely would have approved Silverman's application had it known the truth.  But unlike Daghighian, Silverman has utterly failed to take responsibility for his own action or inaction.  Even though Silverman could have corrected the problem even before it to the Court's attention by simply reading the *pro hac vice* application after he received notice of its filing, in his affidavit he did nothing other than point his finger at a junior attorney.  This unbecoming conduct reflects poorly on Silverman.  This is not mitigated by the fact that Silverman's lawyer has apologized on his behalf and acknowledged the "weakness" of his explanation.  Silverman ought to have stepped up to the plate and accepted some level of responsibility in his own affidavit.  He did not do so.[3]

In short, Daghighian's underlying misconduct was more serious than Silverman's.  But Daghighian, a junior attorney, has accepted responsibility, apologized, and taken steps to avoid repetition of the error.  Silverman, a senior attorney, has done nothing of the kind.  Given these circumstances, Silverman, in the Court's view, merits a greater sanction than Daghighian.

The Court imposes the following sanctions upon Daghighian:

---

[3] The Court acknowledges that once Judge McBryde's order was entered on January 5, 2011, Silverman and his counsel presumably would have viewed him as the potential subject of a criminal investigation, a fact that would affect whether it would be a good idea for Silverman to provide an affidavit regarding the events at issue.  But his affidavit to Judge McBryde was signed and submitted long before Judge McBryde referred the case to the United States Attorney.  Yet the affidavit contained no acknowledgment of any failure on Silverman's part, no acceptance of responsibility, and no expression of regret.

1. Daghighian must provide a copy of this decision to the attorney disciplinary authorities of the State of California within seven days of entry of this order and must certify to this Court that he has done so. The Court is hopeful that in determining what action to take, the California authorities will take into account the mitigating factors the Court has noted in this decision.

2. Daghighian must pay a fine of $1,000 to the Clerk of the Court, to be deposited by the Clerk in the *pro bono* fund established for appointed counsel representing indigent litigants.

3. The Court declines to strike Daghighian's appearance or his *pro hac vice* admission.

The Court imposes the following sanctions upon Silverman:

1. Daghighian must provide a copy of this decision to the attorney disciplinary authorities of the State of New Jersey within seven days of entry of this order and must certify to this Court that he has done so.

2. Silverman must pay a fine of $5,000 to the Clerk of the Court, to be deposited by the Clerk in the *pro bono* fund established for the use by appointed counsel representing indigent litigants.

3. The Court bars Silverman from filing any *pro hac vice* applications in this District in any case for a period of three years unless he first obtains permission from the Court's Executive Committee in connection with the particular case.

**Conclusion**

The Court sanctions Melvin Silverman and Sepehr Daghighian as set forth in this Memorandum Opinion and Order.

                                                                                    _____
                                                                                    MATTHEW F. KENNELLY
Date: April 17, 2011                                                United States District Judge